The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> NICHOLAS "NIKKI" ARMSTRONG, <br><br> Defendant. | NO. CR 19-243 JCC <br><br> **GOVERNMENT'S SENTENCING MEMORANDUM** |

The United States of America, by Tessa M. Gorman, Acting United States Attorney, and Marie M. Dalton, Assistant United States Attorney for the Western District of Washington, respectfully submit this sentencing memorandum. This matter is set for a sentencing hearing on May 11, 2021, at 9:30 a.m. For the reasons that follow, the government recommends that the Defendant be sentenced to three years of probation, with the first six months to be spent in home confinement.

## I.   FACTUAL BACKGROUND

From at least June 2018 until her arrest in November 2019, the Defendant sold counterfeit Xanax, along with other products, on the dark web. Using the moniker "Trap Enterprises," the Defendant sold these drugs on Wall St. Market, Empire Market, and Nightmare Market. On these marketplaces, the Defendant advertised Xanax bars, displaying pictures of pills imprinted with the word Xanax. For example, the following products were listed for sale on the Defendant's Nightmare Market vendor page:

UNITED STATES SENTENCING MEMORANDUM
*United States v. Armstrong* - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7



8
9
10
11
12
13

14     On these marketplaces, the Defendant sold pills advertised as Xanax to her
15 customers, accepting cryptocurrency for payment.  Once sold, the Defendant delivered
16 these pills by shipping them through the mail.  To conceal her identity, the Defendant
17 used an online postage vendor, purchased postage in cryptocurrency, listed fake return
18 addresses, and traveled to post packages in USPS blue boxes.  In total, on the dark web,
19 the Defendant sold more than 19,000 pills that were advertised as 2 mg Xanax bars, 1,500
20 pills that were advertised as 4 mg Xanax bars, and 25 pills that were advertised as 4 mg
21 Xanax bars.

22     Although the Defendant advertised these pills as Xanax bars, the Defendant was,
23 in fact, selling counterfeit pharmaceuticals.  Instead of selling Xanax, the Defendant sold
24 pills pressed from flualprazolam—a research chemical that is structurally similar to
25 Xanax but includes the addition of a single fluorine atom.  Because of this anatomical
26 difference, flualprazolam falls outside the current list of prohibited benzodiazepines
27 under the Controlled Substances Act.  Despite this anatomical difference, as the

28

UNITED STATES SENTENCING MEMORANDUM
*United States v. Armstrong* - 2

Defendant's dark web user reviews attest, flualprazolam and Xanax produce similar psychoactive effects.  For example, the Defendant's vendor page on Empire Market contains the following reviews:[1]



Because of its effects, flualprazolam abuse has become prevalent in recent years, which can lead to anxiolysis, amnesia, and potential respiratory depression.[2]  Alarmingly, according to the Drug Enforcement Administration, abuse of flualprazolam can even lead to prolonged, severe sedation, including coma.[3]

To create these counterfeit pills, the Defendant used a pill press to ensure her products had the same attributes of Xanax bars, including their size, shape, and Xanax imprint.  The following press and dies were recovered from the Defendant's residence:

---

[1] The chemical name for Xanax is Alprazolam, referred to in the below reviews as "alp."

[2] Flualprazolam: New Psychoactive Substance Sends Six Oregon Teens to ER, PHYSICIANS WEEKLY, *available at* https://www.physiciansweekly.com/flualprazolam-new-psychoactive-substance-sends-six-oregon-teens-to-er/

[3] Flualprazolam, DRUG ENFORCEMENT ADMINISTRATION, *available at* https://www.deadiversion.usdoj.gov/drug_chem_info/flualp.pdf

UNITED STATES SENTENCING MEMORANDUM
*United States v. Armstrong* - 3




Using this press, the Defendant created pills that strongly resemble those produced by Xanax.  For example, in the photographs below, the counterfeit Xanax sold by the Defendant is depicted on the right, while the Xanax produced by Pfizer Pharmaceuticals is depicted on the left:





UNITED STATES SENTENCING MEMORANDUM
*United States v. Armstrong* - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  In addition to the Xanax pills sold online, at the time her residence was searched,

2  the Defendant possessed an additional 106.6 grams of flualprazolam powder that she

3  intended to press into Xanax bars and sell on the dark web.  In total, the Defendant

4  earned, and if the powder were pressed would have earned, at least $70,000 from selling

5  counterfeit Xanax.

6  ## II.    PLEA AGREEMENT

7  On November 26, 2019, the Defendant pled guilty to three counts of Trafficking in

8  Counterfeit Drugs, in violation of 18 U.S.C. § 2320(a)(4).  Pursuant to the terms of the

9  plea agreement, the United States agreed to recommend a sentence of twelve months and

10  one day.  Defendant remains free to recommend any sentence she believes appropriate at

11  sentencing.

12  ## III.    GOVERNMENT'S SENTENCING RECOMMENDATION

13  The government recommends that the Court sentence the Defendant to three

14  years' probation, with the first six months to be served in home confinement.  The

15  government's recommendation appropriately addresses the factors set forth in Title 18,

16  United States Code, Section 3553(a), and satisfies the sentencing objectives therein.

17  ### 1.  Nature and Circumstances of the Offense

18  The Defendant sold over 20,000 counterfeit pills on the dark web, using the

19  trademark of a trusted pharmaceutical company and imprinted to resemble an FDA

20  regulated product.  In reality, the Defendant was pressing an unknown, untested powder

21  that she purchased from an anonymous dark web vendor, selling these pills to

22  unsuspecting buyers.  This powder could have been contaminated, laced with a dangerous

23  substance, or otherwise harmful to consume.  As it was, the Defendant's pills contained

24  flualprazolam, a designer drug that is more potent than Xanax and has a relatively quick

25  onset of effects.[4]  Ingesting flualprazolam depresses the central nervous system, causing

26

27  [4] Emergency Controlled Substances Scheduling Action, State of Hawaii Department of Public Safety, *available at*
https://dps.hawaii.gov/wp-content/uploads/2020/10/notice-of-emergency-Scheduling-Action-etizolam-and-
flualprazolam-notice.pdf

28

UNITED STATES SENTENCING MEMORANDUM
*United States v. Armstrong* - 5

1  loss of coordination, drowsiness, dizziness, blurred vision, slurred speech, respiratory

2  depression, amnesia and, in some cases, death.[5]  Between June and December 2019

3  alone, flualprazolam was associated with at least 44 postmortem and driving under the

4  influence of drugs death investigations in the United States.[6]  Additionally, when

5  flualprazolam is combined with opioids, it contributes to increased overdose through

6  benzodiazepine-potentiated opioid-induced respiratory depression.[7]  Because of these

7  effects, flualprazolam has been scheduled, on an emergency basis, as a controlled

8  substance in Hawaii, Louisiana, Virginia, Delaware, Wisconsin, and Oregon,[8] and was

9  added to Schedule IV of the United Nations Convention on Psychotropic Substances of

10  1971.[9]

11      Although flualprazolam has a similar chemical composition to Xanax, a controlled

12  substance, it does not fall within the current definitions of prohibited drugs outlined in the

13  Controlled Substances Act.  By adding a single fluorine atom, those synthesizing and

14  selling this designer drug are able to evade federal regulations.  Because the exact

15  chemical structure of the designer drug has not been banned, law enforcement has

16  difficulty curtailing the sale and abuse of synthetic benzodiazepines.  Absent emergency

17  scheduling and targeted enforcement, these products flood dark web marketplaces and

18  fuel addiction amongst users.

19      Compounding these enforcement issues is the fact that these products are often

20  sold on dark web marketplaces.  By their nature, these marketplaces allow both buyers

21

22  [5] Flualprazolam: Potent Benzodiazepine Identified Among Death and Impaired Driving Cases in the U.S., CENTER
23  FOR FORENSIC SCIENCE RESEARCH AND EDUCATION, *available at* https://www.npsdiscovery.org/wp-
    content/uploads/2019/12/Public-Alert_Flualprazolam_NPS-Discovery_120519.pdf.
24  [6] Emergency Controlled Substances Scheduling Action, State of Hawaii Department of Public Safety, *available at*
    https://dps.hawaii.gov/wp-content/uploads/2020/10/notice-of-emergency-Scheduling-Action-etizolam-and-
25  flualprazolam-notice.pdf
    [7] Controlled Substances Board, Wisconsin Department of Safety and Professional Services, *available at*
26  https://dsps.wi.gov/Documents/BoardCouncils/CSB/20201009CSBFullPacketEditable.pdf
    [8] *Id.*; Emergency Controlled Substances Scheduling Action, State of Hawaii Department of Public Safety, *available*
27  *at* https://dps.hawaii.gov/wp-content/uploads/2020/10/notice-of-emergency-Scheduling-Action-etizolam-and-
    flualprazolam-notice.pdf
28  [9] UNODC Early Warning Advisory of Psychoactive Substances, *available at*
    https://www.unodc.org/LSS/Announcement?type=NPS

UNITED STATES SENTENCING MEMORANDUM
*United States v. Armstrong* - 6

and sellers to conceal their identities, using monikers rather than real names and exchanging payments in cryptocurrency.  The Defendant further concealed her identity by using fake return addresses, purchasing postage from online vendors, and traveling across town to drop packages in unmanned USPS blue boxes.  She also used an encrypted operating system and utilized additional obfuscating technologies to hide her identity online.  Secure in the relative anonymity afforded by her complex operations, the Defendant sold her counterfeit products, distributing over 20,000 pills, and possessed sufficient flualprazolam powder to produce tens of thousands of additional pills.

**2. History and Characteristics of the Defendant**

Despite the Defendant's longstanding presence on dark web marketplaces, selling her counterfeit products over the course of sixteen months, the government is recommending a probationary sentence because of the Defendant's substantial cooperation.  Upon arrest, the Defendant confessed to her offenses, aiding law enforcement in the execution of their search warrant by leading them to her pill press, flualprazolam powder, and other narcotics located in her residence.  She also voluntarily consented to abandon all interest in her cryptocurrency, then valued at approximately $2,500.  Finally, she provided law enforcement with her account passwords, permitting them to conduct undercover operations that led to the seizure of additional funds.  The Defendant has also performed well on supervision, suggesting that a custodial sentence may not be necessary.

**3. Deterrence and Respect for the Law**

While the government believes a probationary sentence is appropriate, it believes that the first six months of this sentence should be spent in home confinement.  This additional sanction is necessary because the Defendant committed the instant, and longstanding, offenses while on supervision for another offense.  Specifically, in October 2016, the Defendant was convicted of Possession with the Intent to Use Drug Paraphernalia and sentenced to ten days in custody, followed by four years of probation. Less than two years into her probationary term, the Defendant began selling counterfeit

UNITED STATES SENTENCING MEMORANDUM
*United States v. Armstrong* - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Xanax and other products on the dark web.  Additionally, during this probationary term, the Defendant committed other violations, including using marijuana, failing to attend drug and alcohol screenings, failing to report, and failing to pay fines and restitution. History has proven that a mere probationary sentence is inadequate to deter the Defendant from violating the law.  Accordingly, merely imposing an additional probationary term seems to be an inadequate penalty.  Instead, some greater sanction seems appropriate to ensure her future compliance.

This sanction seems particularly warranted because, upon arrest, the Defendant explained to law enforcement that she made a very calculated decision to sell counterfeit pills on the dark web.  Specifically, she explained that she researched the United States Sentencing Guidelines and calculated her potential exposure at 0 to 20 months of imprisonment (which is not far off given that the actual guideline imprisonment range is 18 to 24 months).  The Defendant weighed this potential incarceration against the prospect of making tens of thousands of dollars by violating the law, and chose to sell counterfeit Xanax, even while on probation.  Accordingly, in this case, it appears that an additional sanction is warranted to ensure that the Defendant understands the consequences of her actions and her calculus is altered in the future.

## IV.    CONCLUSION

The Defendant's conduct in this case is indefensible—selling counterfeit, untested chemicals on the dark web, known to harm users when abused.  The troubling nature of the Defendant's crimes are compounded by the fact that she committed them in a sophisticated manner—on the dark web using obfuscating technologies—while serving a probationary term imposed for possessing drug paraphernalia.  Normally, faced with this set of facts, the government would recommend a term of incarceration, consistent with the United States Sentencing Guidelines.  However, given the Defendant's substantial cooperation, and her performance on supervision, the government believes that a probationary term is adequate (albeit one that contains the additional sanction of home

UNITED STATES SENTENCING MEMORANDUM
*United States v. Armstrong* - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

confinement).  As a result, the government recommends that the Defendant be sentenced to three years of probation, with the first six months to be spent in home confinement.

Respectfully submitted this 4th day of May, 2021.

TESSA M. GORMAN
Acting United States Attorney

*/s/ Marie M. Dalton*
MARIE M. DALTON
Assistant United States Attorney
United States Attorney's Office
7000 Stewart Street, Suite 5200
Seattle, Washington 98101
Phone: (206) 553-1511
Email: Marie.Dalton2@usdoj.gov

UNITED STATES SENTENCING MEMORANDUM
*United States v. Armstrong* - 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES SENTENCING MEMORANDUM
*United States v. Armstrong* - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970